# Wilkins Township School District.

1. The policy of the school laws is that the school districts should correspond with the division of counties into townships.

2. The notice required by 2d section of Act of May 8th 1855 for the *continuance* of independent districts, is to be given to the school directors upon proceedings to *create* a new district.

3. In reporting a new district, the commissioners should annex a draft showing both the lines of the independent district and those of the districts from which it is taken.

4. Sewickley Township, 9 Casey 299, adopted.

November 7th 1871.  Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Certiorari to the Court of Quarter Sessions of *Allegheny county :* No. 17, to October and November Term 1871.

In the matter of the Independent School District of Wilkins township.

On the 20th of May 1872, a number of taxable inhabitants of Wilkins Township School District, petitioned the Court of Quarter Sessions. of Allegheny county, representing that they desired "the formation of the territory upon which they reside into a separate and independent school district," and set out the bounds which they proposed for the new district; they prayed the court to appoint commissioners to view the premises and report, &c., on the expediency of establishing an independent school district, in pursuance of the Acts of May 8th 1855, and April 11th 1862.

Commissioners were appointed.   They gave notice of the time and place at which they would meet for the purposes of their appointment, "by handbills posted at least ten days before said meeting, in several of the most public places in said Wilkins township," and having met, "heard expression from the inhabitants of said proposed district of their views," &c. : " That thereupon

[Wilkins Township School District.]

* * * they viewed the premises and report to the court the lines of the proposed new district as follows, viz. :" they then set out the lines by courses and distances, and concluded, " the commissioners return herewith a plot or draft showing the lines of the proposed new district," &c.

A large number of the inhabitants of the Wilkins School District presented a remonstrance against confirming the report. Amongst others, for the following reasons :—

2. The said territory proposed to be formed into an independent school district embraces the whole of the village of Wilkinsburg and the station of Edgewood, and what is embraced in Rice and Curling's plan or village, thereby carving out from the poorer portion of said township the most valuable territory therein embraced for school purposes, to the great injury and prejudice of the rights and interests of the said poorer portion of said township.

3. By the formation of said independent school district two school-houses will be so situated, the one on the north boundary by the line of Penn township, and the new district, of about one hundred and twenty rods between the two lines, by about three hundred and sixty rods in length, with four families there on the eastern side of the new proposed territory, will run about one hundred rods of the other school-house.

They also filed exceptions containing substantially the same objections as those in their remonstrance.

The exceptions were overruled, and a decree made erecting an independent school district in conformity with the report of the commissioners.

James Kelly, a remonstrant, and the school directors of Wilkins Township School District, removed the proceedings to the Supreme Court by certiorari.

They assigned, amongst other errors, the following :—

1. The court erred in confirming the commissioners' report, when it does not affirmatively appear that due legal notice, on part of the commissioners, of the time and place they would view the premises, was given to the inhabitants of the whole township ; and more especially of those parts of the township outside of the proposed independent school district.

2. The court erred in confirming report of commissioners, when the draft returned by commissioners therewith does not exhibit, in addition to the lines of the new district, the lines of the township from which it was created.

*T. B. Patterson* (with whom was *T. M. Marshall*), for certiorari, referred to the Acts of May 8th 1855, § 2, Pamph. L. 509, 1 Bright. Purd. 237, pl. 11, &c., May 20th 1857, Pamph. L. 587, 1 Bright. Purd. 238, pl. 17, &c. As to notice : Bethel Township,

[Wilkins Township School District.]

1 Barr 97; Sewickley Township, 9 Casey 297; Norwegian Township, 8 Harris 324. As to deficiency in draft: Harrison Township, 5 Barr 447; Henderson Township, 2 Watts 270.

*J. Dalzell* (with whom was *J. H. Hampton*), contrà, cited as to draft, Catharine and Frankstown Townships, 7 Casey 304; Warwick Township, 6 Harris 372.

The opinion of the court was delivered, November 13th 1871, by AGNEW, J.—In considering a question involving any of the important institutions of the state, as for example, the system of common schools, it is essential that the court enter into the very spirit of the legislation regulating it. Unless we do, it is liable to be impaired by a misconception of its uses and purposes. After twenty years' experience under the common school system, the legislature, with a view to correct defects and perfect its operations, entered into a thorough revision of the laws regulating it, which resulted in the passage of the Act of 8th May 1854. One evil shown by the past experience was the existence of numerous independent districts, marring the system, and often created to gratify the wealthy or more populous parts of a township to the disadvantage of the poorer and more sparsely settled. Therefore, by the 52d section of the revised act, all laws relating to or creating independent districts, were repealed. But the legislature, finding that this sweeping repeal did injustice in some exceptional cases, in the next year, by the Act of 8th May 1865, extended the time when the repeal should take effect, provided for a just distribution of the property acquired, and also for a continuance of such independent districts as were required by the necessity of the case. But this was to be done only on the application of the directors, and after a *careful consideration* by the court. In order to guard against an improper continuance, the 2d section also required that the board of school directors of the township, out of which any such applying independent district may be formed, shall have received ten days' notice of the proposed application, and of the time and place of hearing. Here, then, is a legislative declaration of the proper kind of notice, when it is attempted to perpetuate an independent district against the general intent and spirit of the common school system. Much greater is the necessity of such a notice, when a new independent district is to be created. The policy of the law is to make the school districts correspond with the municipal divisions of the county into townships. When a township has been thoroughly organized for school purposes, its school-houses adjusted to suit its topography, and the wants and necessities of the people, to cut out of it an independent district to suit the wishes or even the local interests of certain wealthy or influential persons, may

do great injury by the derangement it produces, and the inconvenience and burthens it casts on the poorer or less populous portions. The topographical characteristics of a township often must control the location of schools. Young and tender feet are not to be made to climb steep and rugged hills, cross dangerous ravines, or ford deep streams, or indeed to travel long distances to school. The poorer and more sparsely populated portions are not to be made to bear undue burthens, or suffer inconveniences in carrying out a great popular system, whose purpose is to spread the rays of education and diffuse the light of intelligence most broadly among the people. None know so well as do the directors who represent the whole township, the wants and the interests of their district, and the effect an independent district will have upon the welfare of those parts which remain outside of it. Then why should not the legislative rule for notice for the continuance of an independent district apply to the far more important proceeding to create a new one, which may bring after it consequences disastrous to the township? We know not that such consequences will follow in this case, but we know that we must lay down a rule that will bear upon all cases, and affect one of the most important institutions of the state. Nor will it do to recognise the necessity only for notice to the people at large, as in the division of townships. In such case there is no special institution to be cautiously guarded, but it is a matter merely of general popular convenience. Here, however, we are dealing with a special institution, whose interests are committed to special guardians, who of all others should have specific notice, and an opportunity to explain and defend the interests of their district against derangement and dismemberment. The remarks of Justice Strong, in Independent District No. 8, Sewickley Township, 9 Casey 299, are quite apposite. Though the act does not in express terms require the notice, the public interests and natural justice demand it, and, he says, it is quite as necessary that this should appear *affirmatively* as that it should appear that a party has had his day in court, referring to Bethel Township, 1 Barr 97, and Norwegian Township, 8 Harris 324. We are of opinion, therefore, that in addition to the general public notice given by the commissioners, by handbills or otherwise, at least ten days' special notice should be given to the school directors of the district out of which it is sought to lay off an independent district.

We think, also, it was incumbent upon the commissioners to annex a draft to their report, exhibiting both the lines of the independent district reported, and those of the district or districts from which it is taken, in order to display the relation which the new district sustains to the old. The 5th section of the Act of 8th May 1855, does not stop with the provision that the commissioners

[Wilkins Township School District.]

shall report the lines adopted for the new district, but adds that "the proceedings upon which petition, *commission and report*, and the final disposition thereof shall, in all other respects, be according to the Act of Assembly, now in force, relative to the erection of new townships." That act, to wit, of 15th April 1834, § 14, requires the commissioners " to make a plot or drafts of the townships proposed to be divided, *and* the division line proposed to be made therein, *or* of the township proposed to be laid off." The same duty lies, therefore, upon the commissioners to lay off an independent school district. Indeed, without the proper relation of the new to the old district, laid before the eye of the court by means of a draft of both, it would be difficult for the court to act understandingly. The remaining parts of the old district may be so separated or narrowed, or ill-shapen, that the interests of the schools therein might be seriously impaired, without a proper apprehension of the question on part of the court. The court is not to be sent out in search of the information, but it is the duty of those alleging the necessity of an independent district to furnish the means of determining the question with facility. This point is also a decided one. In the case already cited of the Independent District, No. 8, of Sewickley Township, the 4th exception was in these words : " There was no draft returned by the commissioners of the lines of the new district, nor of the lines of the township from which it was created." Justice Strong quotes the language of this exception, and says, " This is a fatal defect." That these views are justified by the legislative intent we are authorized to believe, by the interpretation of the Act of 1855, summed up in the 1st section of the Act of 20th May 1857. " The true intent and meaning (it says) of the provisions of the supplement to the General School Law, approved the 8th of May, A. D. 1855, for the creation of independent school districts, was and is to provide in a *guarded* manner for *exceptions* to the general rule, and to protect and promote the educational welfare of occasional localities that from *natural* or *other adequate* obstacles, could not be properly provided for under the organization of township districts ; and further, it was not the intention to cut up townships into single school districts, nor to carve out the wealthier from the poorer portions of a township or townships, to the prejudice of the rights and interests of the latter." The construction we have placed on the provisions of the Act of 1855 as to notice and the draft are essential, as we have seen, to guard well the interests of the people, to prevent the creation of independent districts, contrary to the spirit of the legislative intent, and to protect and promote the welfare of the common-school system. The policy of the state does not, indeed, forbid high-schools when the circumstances of a community will justify their existence ; but the great purpose of the common-

school system is to spread most widely the benefits of education among the masses of her people, thus, by the general diffusion of intelligence, making sure the foundations of free government.

The decree and order of the Court of Quarter Sessions is therefore reversed, and the proceedings quashed.