## In re Ulster Township Independent School District

*Andrew S. Moscrip* and *Edward C. O'Connor*, for petitioners.

*Romeyn F. Culver*, for Independent School District.

*Duvall & Reuter*, for Ulster Township School District.

ROSENFIELD, P. J., July 12, 1954.—Petitioners, residents and taxpayers of the Independent School District of the Township of Ulster, are requesting us to make an order to abolish the Independent School District of the Township of Ulster. The petition was presented to us on April 5, 1954. The hearing was had April 20th. The case was argued before us on June 29th.

The court finds the facts to be as follows:

1. The Independent School District of the Township of Ulster was formed by an order of court July 1, 1911.

2. The district embraces what is known as the Village of Ulster and the adjacent area, approximately one and one-half miles in radius, and is located wholly in Ulster Township.

3. Though the population does not appear in evidence, the 1951-52 Pennsylvania Manual shows the population of Ulster Township to be 911.

4. The population of the independent school district is included therein, but does not separately appear.

5. There are 279 inhabitants of Ulster Township subject to per capita tax, of whom about 50 are usually exonerated.

6. There are 355 taxables subject to per capita tax in the independent school district, of whom 60 may be expected to be exonerated.

7. In Ulster Township there are 100 pupils from the kindergarten to the twelfth grade, inclusive.

8. In the independent district there are 89 pupils from kindergarten to twelfth grade, inclusive.

9. The mill rate in Ulster Township is 35 mills.

10. The mill rate in the independent district is 25 mills.

11. The tax collector, therefore, collects two rates of taxes, one for the township and one for the independent district.

12. Both Ulster Township and the independent district impose a per capita tax of $10.

13. The assessed value of the township is $177,565.

14. The assessed value of the independent district is $177,375.

15. At the time of the hearing, the independent district had $4,000 and no indebtedness.

16. At the time of the hearing, Ulster Township had $8,003.88 in the treasury, and it was estimated that the township would be in the black at the end of the year, although the existence of a slight indebtedness at that time was possible.

17. The voters of Ulster Township cannot vote for the directors of the independent district, but the voters of the independent district can vote for directors in the township.

18. The secretary of the independent school district is paid $120 per year, and the treasurer is paid $60 per year.

19. The secretary and treasurer of the township are paid $85 and $45 per annum respectively.

20. There is no school building in Ulster Township.

21. There are five school directors in the independent district who receive no remuneration, except their compensation for attendance two days each year at the annual county directors' meeting and one day for the election of the county superintendent at the time when it is necessary to elect such superintendent.

22. Four of the five directors of the independent school district own no real estate.

23. On January 31, 1951, the School District of Athens Borough, Athens Township, and Litchfield Township entered into a jointure agreement effective

July 1, 1950, covering junior and senior high schools. This was amended and became effective July 1, 1953.

24. On May 8, 1953, the School Boards of Sheshequin Township, Ulster Township, and the Ulster Independent District entered into a joint school agreement covering grades 1 to 8; this agreement was effective for three years from Monday, July 1, 1953.

25. On May 21, 1953, the School Boards of Athens Borough, Athens Township, Litchfield Township, Sheshequin Township, and the Ulster Independent District entered into a joint school agreement covering grades 7 to 12; this is effective for three years from the first Monday of July 1953.

26. The School Boards of the Township of Ulster and the Township of Smithfield have entered into a joint agreement covering grades 1 to 12.

27. Under this agreement, Ulster Township sends 12 high school pupils to East Smithfield, one of whom comes from the Independent district.

28. Ten high school students from Ulster Township are sent to the Athens jointure.

29. The Ulster Township pays the Athens jointure $26 per pupil per month, and the East Smithfield $23 per pupil per month.

30. After much consideration, grades one to eight were retained in the independent district, and grades 8 to 12 were sent to Athens, East Smithfield, and Towanda.

31. The cost of sending pupils from the independent district to Athens was $240 per pupil per year.

32. The cost of the same pupils at the independent district before they were sent to Athens was $310.

33. Under jointure with the Sheshequin Township and the independent district, Ulster Township sends grades 1 to 8 to the independent district.

34. If the independent district were abolished, children now sent to Athens would go to East Smithfield,

and in most instances not be compelled to leave as early as at present.

35. The Smithfield Township school, a new structure costing $220,000, could take care of any increased enrollment there caused by abolishing this district.

36. The independent district contemplates the erection of a new elementary building to cost $260,000.

37. Athens Borough jointure contemplates the erection of a building to cost from $1,000,000 to $1,500,000, of which the Ulster Independent District will be called upon to pay no more than five percent, and the share of Ulster would be a five-mill tax in addition to what it now pays.

38. To terminate jointure agreements effective July 1953 to July 1956 notice to terminate must be given one year before July 1956.

39. The Sheshequin contract for carriage of students to Athens as a result of the jointure likewise terminates at the end of May 1956.

40. An increase in enrollment in all these districts is anticipated.

41. The school directors of Ulster Township advocate the abolition of the independent districts.

### Discussion

The policy of the law opposes the existence of independent school districts.

In Mount Pleasant Township Independent School District, 10 Pa. C. C. 588, the court said:

"By the second and third Constitutions of Pennsylvania adopted in 1790 and 1838, it was ordained that the legislature shall provide by law for the establishment of schools throughout the state, in such manner that the poor may be taught gratis."

This case provides a rather complete early history of school districts which, at one time, were required by law to consist of the entire township. The court, referring to the Act of May 20, 1857, P. L. 581, declara-

tory of the powers of courts of quarter sessions to create independent school districts, referred to the folowing language, page 589:

" 'That the true intent and meaning of the provisions of the supplement to the general school law, approved the 8th day of May, A. D. 1855, for the creation of independent school districts, was and is to provide in a *guarded manner* for *exceptions* to the general rule, and to protect and promote the educational welfare of occasional localities that, from *natural* or other *adequate obstacles*, could not be properly provided for under the organization of township districts; . . .'."

Referring to the Act of May 20, 1857, the Supreme Court, in Independent School District No. 8, in Sewickley Township, 33 Pa. 297, 300 (1858) said:

"It declares such districts to be against the general policy of the law, and it was designed to impose new obstacles in the way of their continuance, rather than to facilitate their creation."

When the Acts of 1855 and 1857 governed the formation of an independent district, the court was required to find that the formation of such a district was necessary. To find that it was expedient was not sufficient: Hatfield Independent School District, 1 Montg. 77, 80.

In Columbus Borough Independent School District, 21 Dist. R. 417 (1911), the court said, page 418:

"The Act of Assembly of May 8, 1854, P. L. 617, then codifying the school laws, swept away all independent school districts which at that time were said to be very numerous, and, as remarked in Wilkins Township School District, 70 Pa. 108 (1871), were 'marring the system and often created to gratify the wealthy or more populous parts of a township to the disadvantage of the poorer and more sparsely settled,' and under that act 'the policy of the law was to make the school districts correspond with the municipal divisions of the county into townships.'

"A provision for the formation of independent school districts was, it is true, made the following year, 1855, but the legislature, two years later, 1857, declared that this act 'was and is to provide in a guarded manner for exceptions to the general rule and to protect and to promote the educational welfare of occasional localities that, from natural or other adequate obstacles, could not be properly divided under the organization of township districts; and, further, it was not the intention to cut up townships into single school districts nor to carve out the wealthier from the poorer portions of a township or townships to the prejudice of the rights and interests of the latter.'

"This latter act declared independent districts to be against the general policy of the law, and it was designed to impose new obstacles in the way of their continuance rather than to facilitate their creation: Independent School District No. 8, in Sewickley Township, 33 Pa. 297 (1858).

"The policy of the legislature has always been to establish an *uniform* system of common schools. Independent school districts and sub-districts have, indeed, been allowed, but they have always been allowed as exceptions; as excrescences on a system that otherwise would have been uniform. They have not been encouraged: Conley et al. v. School Directors, 32 Pa. 194 (1858).

"The law does not favor the erection of independent school districts: In re Independent School District, 5 Kulp, 325 (1879). They are not encouraged: Hatfield Township School District, 2 Walker, 169 (1883). They will not be erected in absence of extreme necessity, where the effect will be to set off the wealthier portion of the township as a separate organization to the prejudice of the interests of the poorer portion: Mount Pleasant Township Independent School District, 10 Pa. C. C. Reps. 588 (1890); Independent School District in Greenwood Township, 19 Pa. C. C. Reps.

452 (1897); Franklin Township Independent School District, 8 Dist. R. 370 (1899); Foxburg Independent School District, 25 Pa. C. C. Reps. 226 (1901).

"Under the law as it existed prior to the passage of the School Code, as shown by the foregoing, it is apparent that the formation of independent school districts was against the general policy of the law, looked upon with disfavor and never allowed except for substantial and exceptional reasons.

"By the 108th section of the School Code, the legislature, as was done in 1854, has again expressly abolished all independent school districts and again placed all school districts upon a uniform basis throughout the state, making each school district co-extensive with a township or municipal division of a county. This would seem to be an adherence to the general policy prevailing since 1854."

The most recent case we have been able to discover is In re Weaverland School District, 67 York 111, 112 (1953), where the court said:

"The policy of the legislature has always been to establish a uniform system of public schools. The formation of independent school districts was the exception rather than the rule and could only be erected in cases of extreme necessity: Columbus Borough School District, 39 Pa. C. C. 167; Conley et al. v. The School Directors of West Deer Township, 32 Pa. 194."

At the outset petitioners disclaimed any intention of impugning the motives or integrity of the school board of the independent district, nor do we find any evidence of incompetence, lack of interest, or wrongdoing. The directors have acted in the best interests of the district according to their best judgment. Some petitioners withdrew because, upon reconsideration, they concluded that the petition reflected upon such school directors. No reflection was intended. However, most of these petitioners still advocate the abolition of the district.

Most petitioners wanted the district abolished so that they might exercise their right to vote for the election of the directors who, under the statute, are now appointed by the court. The court will be glad to be relieved of the appointing power. However, election by the people does not assure the integrity or the efficiency of the public officer, nor can it automatically endow him with omniscience. We agree that the American way dictates that the directors should be elected by the people. However, that is not alone sufficient reason for the abolition of the district. The people, through their representatives in their legislature, may alter the law to provide for the election of directors in independent districts.

The existence of this independent district cannot be justified in our opinion. There are no school buildings in the township outside the independent district. The township board, therefore, has nothing over which to exercise jurisdiction. Two school boards should not be required to do the business of this township, which has only 634 taxables, 189 pupils, and a total assessed valuation of $355,000. Nor should two paid secretaries and two paid treasurers be required to do clerical and accounting work. One part of the township should not be required to enter into a jointure with another part of the township as has been done in this case. The wealthier and more populous portion of the township composes a separate organization to the detriment of the other portion, contrary to the rule set forth in the Columbus Borough Independent School District case, supra. The voters of the township cannot vote for directors of the independent district, but voters of the independent district can vote for directors in the township. This is un-American. It is difficult to understand from the record why the district was created in 1911, except that it had existed prior thereto. To have one board exercising jurisdiction over all pupils and teachers in the township will, in our opinion, be con-

ducive of the welfare of the pupils and taxpayers of both districts, especially since the township is not heavily populated or wealthy according to present day standards. There is no evidence that the independent district could not be provided for properly under the organization of the township district.

*Order*

Now, July 12, 1954, the Independent School District of the Township of Ulster is hereby abolished. The court retains jurisdiction of the proceedings for the purpose of facilitating the abolition.